[Crim. No. 139.  Third Appellate District.—February 1, 1911.]

THE PEOPLE, Respondent, v. PANG SUI LIN et al., Appellants.

CRIMINAL LAW—ROBBERY—MISCONDUCT OF DISTRICT ATTORNEY—IM-PROPER QUESTIONS—GENERAL BAD CHARACTER OF DEFENDANTS.—Where several Chinese defendants were jointly charged with robbing another Chinaman, and the evidence was conflicting, it was prejudicial misconduct of the district attorney to persist in asking improper questions relative to the general bad character of the defendants as to other matters disconnected with the robbery charged, which could only tend to make the jury believe that men of such bad character would be likely to commit the offense charged; and it requires reversal of the judgment notwithstanding such questions were overruled, and the jury instructed to disregard them.

ID.—DUTY OF DISTRICT ATTORNEY—FAIR TRIAL FOR DEFENDANT.—A fair trial for the defendant should invite and receive from the district attorney the same solicitous consideration as the conviction of the guilty, and it is as much his duty to safeguard the defendant's constitutional rights as to seek a conviction; and if he violates his duty in that respect for the sake of winning a victory in the lower court, he should expect a reversal upon appeal.

ID.—REVIEW OF MISCONDUCT UPON APPEAL.—The misconduct of the district attorney can be reviewed only upon appeal from the judgment, and cannot be regarded upon a motion for new trial, and though the reversal of the judgment for misconduct of the district attorney has the same effect to require a new trial, yet that must be the proper procedure; and the order denying the new trial must be affirmed and the judgment reversed.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. C. Webster, for Appellants.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

BURNETT, J.—The defendants, who are of the Mongolian race, were convicted of robbing another Chinaman, and they

appeal from the judgment and the order denying their motion for a new trial.

Several assignments of error are made, but, save one, we deem them without substantial merit.

During the cross-examination of one of the defendants the following proceedings, as shown by the transcript, took place:

"The district attorney asked the following question: Is it not a fact that you stole from a merchant in Virginia City the woman you are living with now?

"Mr. Webster: We object.

"Witness: I never been in Virginia City in my life.

"Mr. Holland: Is it not a fact that you took the woman away from her husband, a Chinese merchant, the woman you are living with now?

"A. I never been in Virginia City in my life.

"Q. It might not have been in Virginia City. A. I did not.

"Mr. Webster: This is entirely improper, your honor.

"Mr. Holland: I will ask the question.

"Mr. Webster: I object on the ground the question is improper.

"The Court: He has already answered it. That is enough.

"Mr. Holland: Now, haven't you mortgaged or pledged this woman—

"Mr. Webster (interrupting); I object to any further examination on that line.

"The Court: Counsel has asked him if he didn't mortgage this woman; the question is highly improper and the objection is sustained. I don't want any discussion about the admissibility.

"Mr. Holland: I asked him if he had always led a proper kind of life. I think I have a right to ask the question.

"The Court: I don't think you have a right to ask this kind of a question and I want no discussion about it.

"Again, the district attorney, in cross-examination of the same defendant, asked the following question: Are you the Charley Jones who, in conjunction with Jim Lee, violated an injunction issued out of this court and mashed a cabin down on the Shawmut mine and broke into a cabin and violated an injunction of—

"Mr. Webster: I object as not proper cross-examination.

"The Court: I will sustain the objection. Let me state, gentlemen of the jury, you will pay no attention to any such question asked, draw no inference from that at all. It is not a proper question to ask the witness, and you are instructed now, gentlemen, to pay no attention to it. The objection is sustained.

"Again, on cross-examination of the defendant, Leong Ah Din, the district attorney asked him the following question: Q. Is is not a fact that you and Charley Jones are what is known among Chinamen as 'hatchet-men'?

"Which question was objected to by defendants' counsel on the grounds that it was improper, not proper cross-examination, incompetent, irrelevant and immaterial.

"The Court: It is not cross-examination, gentlemen. The court is limited in the cross-examination to the examination in chief; it is not cross-examination."

In reference to the foregoing we deem it proper to make the following observations: The learned trial judge readily perceived that the questions were improper, and promptly sustained objections thereto. He went further, and endeavored to fortify the minds of the jury against any unfavorable impression that might be created by what is assigned as the misconduct of the district attorney. It is, nevertheless, true that this officer is the representative of the people in a very important capacity, is generally of consequence in the community, and it is a reasonable and almost necessary inference that some at least of the jurors would conclude that the district attorney would not ask such questions unless he could prove what was implied in such questions if he had been allowed to do so. The result of this impression would be the opinion that the defendant is a man of bad character, and likely to commit the crime charged against him. It is apparent that this circumstance may have weighed decisively against the defendants here, and we cannot say that otherwise they would have been convicted in the f ce of the directly conflicting evidence. The effect upon t minds of the jury would be the same whether the distr attorney was acting in good faith or with a purpose of prej dicing the defendants. Of course, in the trial of crimin. cases questions will frequently arise about which lawyers and

judges may fairly differ in opinion, and in those cases defendants cannot complain of the mere asking of questions to which an objection may be sustained, but there are certain elementary rules of evidence so clearly established and fundamental rights of persons charged with crime so generally recognized, that any infraction or invasion of them cannot be ·justified or excused on the ground of ignorance or good faith, even. It is a trite saying, but its repetition seems not uncalled for, that a fair trial for the defendant should invite and receive from the district attorney the same solicitous consideration as the conviction of the guilty. If the district attorney should be more anxious to win a victory in the lower court than to accord to the defendant the rights that he is entitled to under the constitution, he must not be surprised if his success comes to naught in the higher forum. The case is brought within the principle announced in *People* v. *Wells,* 100 Cal. 459, [34 Pac. 1078], *People* v. *Valliere,* 127 Cal. 65, [59 Pac. 295] , *People* v. *Derbert,* 138 Cal. 467, [71 Pac. 564], and *People* v. *Derwae,* 155 Cal. 592, [102 Pac. 266].

As the defendants were jointly charged with the crime and tried together, it is probable that they were all prejudiced alike by the said incidents.

The ground herein considered cannot be regarded on the motion for a new trial, but can be reviewed only on an appeal from the judgment. (*People* v. *Amer,* 151 Cal. 503, [90 Pac. 698].) The effect of the reversal of the judgment is, obviously, the same as of the order denying the motion for a new trial, but, under the decisions as we view the matter, the order denying said motion should be affirmed and the judgment reversed, and it is só ordered.

Hart, J., and Chipman, P. J., concurred.