[Crim. No. 4600. Third Dist. Aug. 22, 1967.]

In re RACHELLE TERESA BUTTERFIELD on Habeas Corpus.

R. Donald Chapman, Public Defender, Rose Elizabeth Bird and Rudolph A. Hoffman, Deputy Public Defenders, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Arnold O. Overoye, Deputy Attorney General, for Respondent.

FRIEDMAN, J.—Petition for habeas corpus, challenging a juvenile court commitment to the California Youth Authority. The petitioner, a 15-year-old girl, is presently in custody at the Youth Authority Reception Center at Perkins, Sacramento County.

In May 1966 a petition was filed with the juvenile court alleging that she had run away from her parents' home. (The habeas corpus petition contains an undenied allegation that in February 1966 she had slashed her wrists in a suicide attempt. Other documents reveal an unstable family situation.) The juvenile court committed her to Napa State Hospital for the 90-day diagnostic period authorized by section 703, Welfare and Institutions Code.[1] Commitments for two additional 90-day periods followed.[2] On April 12, 1967, after expiration of the third diagnostic commitment, the girl was declared a ward of the juvenile court under section 601.[3] (Although no copy of the Napa Hospital report is included in the papers

---

[1] All statutory references in this opinion are to the Welfare and Institutions Code unless otherwise noted.

[2] Legal propriety of these additional commitments is not in question here.

[3] Section 601 provides: "Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court."

before us, the habeas corpus petition has an undenied allegation declaring that the diagnosis was ''Schizophrenic Reaction, Schizoaffective Type.'') The order took physical custody from her parents and placed the girl in the home of an aunt and uncle. Relatively minor behaviour problems occurred. In May 1967 she threatened another school pupil and was sent home from school. That evening she took an overdose of pills (referred to in the papers only as a ''prescription drug'') and was found in a coma. Later she said that although she did not want to die, it would be better to be dead than to be returned to the juvenile hall.

The probation officer then filed a second petition with the juvenile court, seeking a declaration of wardship under section 602.[4] It alleged: This person comes within the provisions of Section 602 of the Juvenile Court Law of California, in that: Said minor, RACHELLE TERESA BUTTERFIELD, on or about the 19th day of May, 1967, at and in the County of Santa Clara, State of California, said minor is in danger of leading an immoral life, in that, said minor did ingest an unknown quantity of a prescription drug in an attempt to do bodily harm; thereby violating the Court Order of April 12, 1967.''

A hearing was held at which the girl and her mother were present. At the hearing the court rendered the judgment under attack, finding that the minor came within section 602; finding that she had ingested an unknown quantity of a prescription drug in an attempt to do bodily harm, thereby violating the wardship order of April 12, 1967; directing her commitment to the Youth Authority and ordering her placement in Agnews State Hospital pending acceptance by the Youth Authority. After her acceptance by the Youth Authority (see § 736), she was taken from the state hospital to the reception center at Perkins.

The judgment is appealable. (§ 800.) Nevertheless, habeas corpus is an available means of inquiry into claims that constitutional guaranties have been violated. (*In re Florance*, 47 Cal.2d 25, 28 [300 P.2d 825]; *In re Bell*, 19 Cal.2d 488, 494-495 [122 CP.2d 22].) Such claims are made here. The girl is now in a Youth Authority reception center, a facility

---

[4]Section 602 declares: ''Any person under the age of 21 years who violates any law of this State or of the United States or any ordinance of any city or county of this State defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court.''

for temporary detention and processing of wards pending their assignment to institutions for long-term confinement and care. If petitioner's commitment is invalid, it should be interrupted before further migrations between institutions. Appeal is thus an inadequate remedy.

 Due process of law is a requisite to the constitutional validity of juvenile court proceedings in which alleged misconduct may result in a determination of delinquency and commitment to a state institution. (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 537-538, 87 S.Ct. 1428].) In that kind of proceeding due process demands such notice of hearing as would be constitutionally adequate in a civil or criminal proceeding (*In re Gault, supra,* 387 U.S. 1 [18 L.Ed.2d at p. 549, 87 S.Ct. 1428]) ; demands representation by counsel or waiver of that right (*ibid.,* [18 L.Ed.2d p. 554, 87 S.Ct. 1428]) ; prohibits use against the juvenile of his self-incriminating statements unless he knows that he need not speak and will not be penalized for silence (*ibid.,* [18 L.Ed.2d, pp. 555-563, 87 S.Ct. 1428]: cf. *In re Patterson,* 58 Cal.2d 848, 852-853 [27 Cal. Rptr. 10, 377 P.2d 74]).

The papers before us demonstrate full compliance with the California statutes requiring advance service of a copy of the petition and notice of hearing (including information as to entitlement to counsel) upon the juvenile and her parents (§§ 658, 659). At the inception of the hearing before the juvenile court, the probation officer again advised the juvenile and her mother of their right to counsel, including a court-appointed attorney. Both stated clearly and with apparent deliberation that they wished to proceed without an attorney. The clerk then read the basic allegation of the petition quoted earlier in this opinion. At that point, with no attempt to impart knowledge of the right to refrain from self-incrimination, the probation officer asked if the charges were true, the minor replied in the affirmative and the court immediately announced judgment.[5]

---

[5]The following is excerpted from the transcript:

"MR. PALMA [Deputy Probation Officer]: Now, Rachelle, did you understand the petition that was read?

"THE MINOR: Yes.

"MR. PALMA: Are these allegations true?

"THE MINOR: Yes.

"MR. PALMA: Will you explain to the Court what happened at the time?

"THE MINOR: I just got suspended from school, and my aunt came and picked me up and she said that she thought she was going to put me

798

■ No evidence other than the minor's admission was received. The adjudication was one of "delinquency" because it found her guilty of disobedience to a court order and committed her to confinement in a correctional institution. It was used "against" her in the sense that it formed the entire evidentiary basis for the judgment. The statement was self-incriminating. She had no prior warning and there is no evidence that she had any awareness of her right to refrain from self-incrimination. Evidentiary use of her self-incriminating statement without that awareness infected the hearing with a violation of due process.

■ The formal and literal waiver of counsel was ineffectual because not made with an intelligent understanding of its consequences. (See *In re Johnson,* 62 Cal.2d 325, 334 [42 Cal.Rptr. 228, 398 P.2d 420].) The girl's history was one of emotional disturbance and social maladjustment, not criminality.[6] The facilities of the Youth Authority are inhabited primarily by "public offenders" who have violated the criminal laws. (§§ 1700, 1703.) California designates a narrow class of youthful subjects who are innocent of law-breaking but committable to the Youth Authority along with the public offenders. After a juvenile has been made a ward under section 601 (for example, as one in danger of an immoral life) and has violated a lawful order of the court, he may be adjudged a ward under section 602. He may then be committed to the Youth Authority "as an additional alternative" under section 731.[7] The statutory theory is that he has demonstrated a degree of incorrigibility which *may* warrant an indefinite commitment in an institution designed primarily for public offenders. Once in the institution, he may be

---

back in Juvenile Hall and I just—she left the house and I got in the cabinet and took some medication.

"MR. PALMA: What was your reason for taking the medication, Rachelle?

"THE MINOR: I didn't want to go back to Juvenile Hall.

"MR. PALMA: Request the petition be sustained.

"THE COURT: All right. At this time the Court finds and determines the allegations of the petition filed June 26, 1967, are true. This young lady is found to come within the provisions of Section 602 of the Juvenile Court Law. . . ."

[6] Attempted suicide is not a crime in California. (See *Tate* v. *Canonica,* 180 Cal.App.2d 898, 903 [5 Cal.Rptr. 28].) Penal Code section 401 does denounce one who encourages or aids another to commit suicide.

[7] Section 731 provides: "When a minor is adjudged a ward of the court on the ground that he is a person described by Section 602, the court may order any of the types of treatment referred to in Sections 727 and 730, and as an additional alternative, may commit the minor to the Youth Authority."

confined until his 21st birthday (§ 1769) ; may be placed on parole as a "CYA parolee" or discharged (§ 1766). No matter how non-criminal in theory, an inevitable stigma accompanies such a commitment. (*In re Contreras*, 109 Cal. App.2d 787, 789-790 [241 P.2d 631].) Our present minor— with a history of emotional disturbance but not delinquency— uttered the words of waiver with no awareness that long-term confinement in a correctional institution was a possible consequence of the wardship order. Indeed, the girl entered upon the hearing in the hope that another foster home would be found for her.[8] By proceeding without an intelligent waiver of counsel, the court deprived the minor of a second requisite of due process.

Although other aspects of the proceeding have been debated, the lack of effectual waiver of counsel and of the right to refrain from self-incrimination require that the commitment be set aside. Since further juvenile court proceedings will occur, one more aspect should be discussed. The court adjudged wardship under section 602 on the theory that the

---

[8]The following are excerpts of the colloquy after the court had announced wardship under section 602:

"THE COURT: Now, this brings us to the part of the hearing where we decide what action to take next. In order to assist the Court in making this kind of a decision, the Probation Department has prepared a special study which we call a social study, which was handed to the Court yesterday afternoon. . . . Now, the recommendation of the Probation Officer, based on all this information, is that the young lady be committed to the C.Y.A.

"MRS. BUTTERFIELD: What is that? I really don't know.

"THE COURT: Well, the C.Y.A. stands for California Youth Authority. It is the State agency which supervises all handling of juvenile affairs throughout the State of California. . . . They have facilities where they can give special psychiatric and counselling assistance that you can't get anywhere else except in the Department of Mental Hygiene in one of their State Hospitals, but the C.Y.A. is able, in a security setting, to give this type of assistance.

"MRS. BUTTERFIELD: Would she also get schooling there?

"THE COURT: Oh, yes. Part of any program C.Y.A. runs is a school program. In fact, that's the most important part of the program, really.

"MRS. BUTTERFIELD: Good.

". . . . . . . . . . . . .

"THE MINOR: Do you ever take into consideration hospital report, the hospital's recommendation?

"THE COURT: Oh, yes, the hospital recommendation as well as all the recommendations of everyone who has had anything to do with the case is taken into consideration in deciding what to do. Why, is there something you had in mind, particularly?

"THE MINOR: Well, they had been working on me getting a foster home with this woman that works there, but it seemed that she said my Probation Officer was against it, and I have known a lot of girls that have had quite a few foster homes, and which I have only had one, and I really can't see why I couldn't have just one more, you know."

girl (being already a ward under section 601) had disobeyed a lawful order of the court. Wardship under section 602, in turn, would permit a commitment to the Youth Authority under section 731. The "disobedience" consisted of the girl's second suicide attempt. How this action violated the court's prior orders does not appear. In all realism, the suicide attempt was a repeated manifestation of emotional disturbance, not an act of disobedience. The proceeding appears to have been molded to the language of section 602 as a verbal technique leading to a pre-selected commitment, one offering a combination of physical security and psychiatric services. The array of facilities available for safeguarding and treating emotionally disturbed youngsters is woefully incomplete. In devising judicial commitments crude compromises, diverging from the ideal, are a frequent necessity. A judge seeking an enlightened solution to the commitment problem deserves public and appellate sympathy. The demands of the Juvenile Court Law must be observed, however. The comparatively stringent wardship permissible under section 602 appears to be designed for delinquent youngsters. The present subject has violated no law and her second suicide attempt, like the first, is the apparent product of psychic imbalance rather than delinquency.

Let a writ of habeas corpus issue, annulling petitioner's commitment to the California Youth Authority and directing that the California Youth Authority return petitioner to the custody of the juvenile court which committed her for the purpose of further proceedings in that court.

Pierce, P. J., and Van Dyke, J.,* concurred.

A petition for a rehearing was denied September 19, 1967, and respondent's petition for a hearing by the Supreme Court was denied October 19, 1967.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.