[Civ. No. 858.    Fifth Dist.    Sept. 28, 1967.]

UNITED FARM WORKERS ORGANIZING COMMITTEE, AFL-CIO et al., Petitioners, v. THE SUPERIOR COURT OF KERN COUNTY, Respondent; GIU-MARRA BROS. FRUIT CO. et al., Real Parties in Interest.

Jerome Cohen for Petitioners.

No appearance for Respondent.

Doty, Quinlan & Kershaw, William A. Quinlan, and Mack, Bianco & Means for Real Parties in Interest.

CONLEY, P. J.—In the midst of a major strike of farm workers formerly employed by the real parties in interest on their 8,000 acres of vineyard in Kern County and southern Tulare County, the trial judge herein issued a preliminary injunction in Giumarra Bros. Fruit Co. et al., v. United Farm Workers Organizing Committee et al., Kern County No. 100011, which contained, in addition to a comprehensive restraint of allegedly improper means of picketing, an additional provision which was transparently invalid forbidding the use under any circumstances of any mechanical device for the purpose of amplifying the human voice and directing it toward plaintiffs' present employees while they were engaged in their work on plaintiffs' land. ▊ That the petitioners herein had no "plain, speedy and adequate remedy at law" as alleged, seems apparent in this modern age when timely action is requisite for the protection of constitutional rights; the petitioners have in fact filed an appeal from the preliminary injunction as issued, but the perfection of a record, the consideration of legal claims, and the necessary time consumed in any formal appeal make it apparent that before correction of this basic error could be secured through the appellate device the strike might well be either won or lost.

The acreage of the real parties in interest is devoted to the raising of table grapes; the picking season has been partly finished and it will be terminated long before a final appellate judgment could be secured from the upper courts; the exercise of viable constitutional rights should not be made to depend upon a slowly evolving test of their correctness; the Constitution is a live document which persists in full strength at all times, and when there is a clear breach of a constitutional right, timely attention to its enforcement is essential.

This strike, as shown by the record, is no exception to the country's general experience that there is frequently trouble generated on both sides as between the participants. As a consequence, a preliminary injunction was issued which is many faceted, and is comprehensive and almost complete in keeping the contest between vineyard owners and their former employees decently peaceful and within the law. In the preliminary injunction issued in this case, the provisions from

paragraph (a) to subparagraph (1) in substance were included in the original temporary restraining order issued by the court on the 7th day of August, 1967. The present preliminary injunction of August 18, 1967, however, contains the additional provision numbered (m), restraining the strikers from: "Using any mechanical device for the purpose of amplifying one's voice and directing the same toward plaintiffs' employees while plaintiffs' employees are engaged in their work for plaintiffs." The injunction reads in relevant part as follows:

"Now, THEREFORE, upon filing a surety bond in the amount of $1,000.00, the defendants, and each of them, their agents, employees, representatives, officers, members, organizers and pickets, and all persons in active concert and participation with them, be and they are hereby enjoined and restrained from

"(a) Picketing, standing, sitting, loitering, gathering, assembling, massing, parading, walking, stopping, or stationing, placing or maintaining any pickets or other persons at, near, about or within plaintiffs' facilities and properties located at said places described in Schedule "A" annexed hereto and made a part hereof, or in the street or highway, public or private, the use of which is necessary for ingress to or egress from said properties or facilities; *provided however*:

"(1) that where there is regular ingress and egress to or from plaintiffs' properties, facilities or ranches customarily and regularly used by vehicular traffic, not more than three (3) pickets may be stationed at each side of any said regular ingress or egress;

"(2) that where there is not ingress or egress regularly or customarily used by vehicular traffic and picking crews are entering plaintiffs' properties from public streets, roads or highways, one (1) picket may be placed at intervals of not less than fifty (50) feet, each from the other;

"(3) that said pickets shall not be upon the private property of plaintiffs;

"(4) that said pickets shall not parade or march across any said ingress or egress or any public or private road in the vicinity thereof, the use of which is necessary for the ingress or egress to or from said properties, facilities or ranches, nor in any other manner physically interfere with or obstruct said ingress or egress or public roads in the vicinity thereof.

"(b) Placing or driving their vehicles in front of or behind vehicles desiring to enter plaintiffs' facilities, properties or

ranches in such a manner as to slow said vehicles down, cause them to stop or impede their progress.

"(c) Parking or placing their vehicles in such a manner as to obstruct the free flow of traffic into and out of plaintiffs' facilities and properties.

"(d) Standing in front of, lying down in front of any vehicles desiring to enter upon plaintiffs' properties, facilities or ranches.

"(e) Placing in front of the drivers of any vehicles any sign or obstruction for the purpose of obstructing the view of said driver, or which will in any manner obstruct the view of said driver.

"(f) Picketing, intimidating or coercing any of plaintiffs' employees at the places where they live, or from entering plaintiffs' employees' homes or vehicles, unless invited so to do by plaintiffs' employees.

"(g) Injuring persons or destroying or damaging property of plaintiffs, plaintiffs' employees, or of others, and from engaging in conduct calculated or likely to cause or causing injury to persons or damage to property.

"(h) Following employees or members of their families by automobile or otherwise in a coercive or threatening conduct or demeanor.

"(i) Intimidating, threatening, molesting, assaulting, pushing, elbowing, shouldering or coercing, or in any other manner intentionally physically contacting the persons or clothing of any of plaintiffs' agents, representatives, visitors, invitees, employees of customers, suppliers, common carriers or others doing or attempting to do business with plaintiffs, or any vehicle in which any of said persons herein described are riding.

"(j) Causing or inducing, or attempting to cause or induce, by word or conduct, any fear of physical molestation, injury or damage to or on the part of plaintiffs' employees, agents, representatives, visitors, invitees, employees of customers, suppliers, common carriers or others, doing or attempting to do business with plaintiffs or their respective employees.

"(k) Obstructing or attempting to obstruct plaintiffs' employees, agents, representatives, visitors, invitees, customers, suppliers, common carriers or others doing or attempting to do business with plaintiffs, or their respective employees, from entering or leaving any of plaintiffs' facilities.

"(1) Engaging in threatening, intimidating, or using loud or obscene language against any of plaintiffs' employees, agents, representatives, visitors, invitees, common carriers, suppliers, customers, or any employees of said persons, doing or attempting to do business with plaintiff.

"(m) Using any mechanical device for the purpose of amplifying one's voice and directing the same toward plaintiffs' employees while plaintiffs' employees are engaged in their work for plaintiffs.

"It Is Ordered that nothing herein shall be construed to limit the right of the pickets herein allowed to be placed to exercise their privilege of free speech, providing same is lawfully done and in accordance herewith, and not in violation hereof."

The petitioners state explicitly that in this proceeding they are not objecting to any part of the preliminary injunction except that portion contained in paragraph (m), and then only to the extent that it absolutely prohibits the use of any mechanical device for the purpose of amplifying the human voice and directing the same toward plaintiffs' employees. The injunction is not limited to a prohibition of "loud and raucous noises" by mechanical amplification, but is complete in its prevention of the use of any mechanical device whatsoever. The petitioners emphasize that they only seek in a proper way and without the emission of any "loud and raucous noise," bullhorns for the purpose of making clear to the employees working in the vineyard their wish that they should become members of the union; this imparting of ideas would necessarily include a statement of the reasons for the strike and the viewpoint of the strikers with respect to their treatment by the vineyard owners, and what they seek to secure through this labor disagreement.

The case of *Wollam* v. *City of Palm Springs,* 59 Cal.2d 276, 284 [29 Cal.Rptr. 1, 379 P.2d 481], seems to us to hold conclusively that the absolute prohibition of amplified speech contained in paragraph (m) of the preliminary injunction is a violation of the rights granted by the First Amendment to the United States Constitution, and to hold that freedom of speech as so guaranteed extends to the means of communication as well as to its content and, more particularly, that the right to communicate includes mechanical amplification. In the opinion the court states: "In certain instances the sound truck may be the only practical means for communication of

opinion; alternative modes of communication, such as radio or television, may be prohibitively expensive, not available, or not effective. In the instant case, the union seeks to inform the public at the job site of its disagreement with the employer. An exposition of the union's position in a dispute may in certain cases be best conveyed by a prepared communication, carefully scrutinized, rather than by the extemporaneous and often inarticulate utterances of a picket. The loss of the loud speaker thus becomes a curtailment of the recognized right of the union to publicize effectively its cause at the job site. [Citations.]

"The right of free speech necessarily embodies the means used for its dissemination because the right is worthless in the absence of a meaningful method of its expression. To take the position that the right of free speech consists merely of the right to be free from censorship of the content rather than any protection of the means used, would, if carried to its logical conclusion, eliminate the right entirely. The right to speak freely must encompass inherently the right to communicate. The right to speak one's views aloud, restricted by the ban that prevented anyone from listening, would frame a hollow right. Rather, freedom of speech entails communication; it contemplates effective communication."

The *Wollam* case concerned itself with the attempt of a labor union to communicate facts about a labor dispute to the public at a job site, and the case here involves a labor union attempting to state facts relative to the pending dispute to workers at the job site; in both cases mechanical devices were employed; in the *Wollam* case the use of such a mechanical device was prohibited by ordinance, while here it is forbidden by injunction. Both the ordinance and the injunction operate in exactly the same manner, and we see no difference in the principle involved.

*Saia* v. *New York*, 334 U.S. 558, 559 [92 L.Ed. 1574, 1577, 68 S.Ct. 1148], is to the same effect. In the opinion it is said: "We hold that § 3 of this ordinance is unconstitutional on its face, for it establishes a previous restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against State action. To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the

volume of sound (the decibels) to which they must be adjusted. The ordinance therefore has all the vices of the ones which we struck down in *Cantwell* v. *Connecticut,* 310 U.S. 296 [84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352]; *Lovell* v. *Griffin,* 303 U.S. 444 [82 L.Ed. 949, 58 S.Ct. 666]; and *Hague* v. *Committee for Industrial Organization,* 307 U.S. 496 [83 L.Ed. 1423, 59 S.Ct. 954].''

The opinion also says, on pages 561-562: ''Loud-speakers are today indispensable instruments of effective public speech. The sound truck has become an accepted method of political campaigning. It is the way people are reached. Must a candidate for governor or the Congress depend on the whim or caprice of the Chief of Police in order to use his sound truck for campaigning? Must he prove to the satisfaction of that official that his noise will not be annoying to people?

''The present ordinance would be a dangerous weapon if it were allowed to get a hold on our public life. Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled. But to allow the police to bar the use of loud-speakers because their use can be abused is like barring radio receivers because they too make a noise. The police need not be given the power to deny a man the use of his radio in order to protect a neighbor against sleepless nights. The same is true here.

''Any abuses which loud-speakers create can be controlled by narrowly drawn statutes. When a city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas. In this case a permit is denied because some persons were said to have found the sound annoying. In the next one a permit may be denied because some people find the ideas annoying. Annoyance at ideas can be cloaked in annoyance at sound. The power of censorship inherent in this type of ordinance reveals its vice.''

In *Kovacs* v. *Cooper,* 336 U.S. 77 [93 L.Ed. 513, 69 S.Ct. 448, 10 A.L.R.2d 608], and in *Haggerty* v. *Associated Farmers of Cal., Inc.,* 44 Cal.2d 60 [279 P.2d 734], the United States Supreme Court and the Supreme Court of this state each held that there could be a prohibition of ''loud and raucous noise'' by amplifiers, and that the use of sound trucks or similar electrical devices could be otherwise reasonably restricted, but that question is not involved in this ruling.

Section 552.1 of the Penal Code specifically provides that article I of chapter 12 of that code, which forbids trespassing or loitering near posted industrial property, does not prohibit: "(a) Any lawful activity for the purpose of engaging in any organizational effort on behalf of any labor union, agent, or member thereof, or of any employee group, or any member thereof, employed or formerly employed in any place of business or manufacturing establishment described in this article, or for the purpose of carrying on the lawful activities of labor unions, or members thereof."

In the opinion in *In re Zerbe*, 60 Cal.2d 666, 669 [36 Cal. Rptr. 286. 388 P.2d 182, 10 A.L.R.3d 840], the California Supreme Court interpreted the foregoing section as conferring a privilege upon labor union officials to picket on a railroad right-of-way, saying among other things: "It is settled that a union has a right to effectively publicize at the jobsite such matters as union objectives and grievances regarding employers and working conditions," citing in support of that statement the *Wollam* case, *supra*, and *McKay* v. *Retail Auto. S. Local Union No. 1067*, 16 Cal.2d 311, 319, 331 [106 P.2d 373], and calling attention to *In re Porterfield*, 28 Cal.2d 91, 105. 114 [168 P.2d 706, 167 A.L.R. 675].

In the opinion in *Schwartz-Torrance Investment Corp.* v. *Bakery & Confectionery Workers' Union*, 61 Cal.2d 766, 768-771, 772 [40 Cal.Rptr. 233, 394 P.2d 921], it is said:

"Picketing by a labor union constitutes an integral component of the process of collective bargaining; as such it involves the exercise of a right which is both statutorily and constitutionally sanctioned.

"The Legislature has expressly declared that the public policy of California favors concerted activities of employees for the purpose of collective bargaining or other mutual aid or protection. [Citations.] Moreover, the Legislature has enacted this policy into an exception to the criminal trespass law. (Pen.Code, § 552.1.) Thus recently we reversed the conviction of a labor union official for picketing on the property of a nonparticipant in the labor dispute. Construing section 552.1. which excepts from the criminal trespass statute any 'lawful activity for the purpose of engaging in any organizational effort on behalf of any labor union . . .' we concluded that '. . . the Legislature in dealing with trespasses . . . has specifically subordinated the rights of the property owner to those of persons engaging in lawful labor activities.' [Cita-

tion.] The policy of the state as expressed in the Labor Code accords with that embodied in federal legislation.

"The picketing, indeed, involves an exercise of the constitutionally protected right of freedom of speech. In *Thornhill* v. *Alabama* (1939) 310 U.S. 88, 102 [84 L.Ed. 1093, 60 S.Ct. 736], the United States Supreme Court, in striking down a blanket ban upon all picketing, declared that '. . . the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution.'

"Although the court subsequently qualified its broad ruling in *Thornhill* by adopting a test permitting states to enjoin peaceful picketing for a purpose antithetical to some valid state policy, the bedrock principle of *Thornhill*, that picketing constitutes a manifestation of free speech, remains intact. This court has frequently acknowledged and applied the *Thornhill* principle. Thus in *Hughes* v. *Superior Court* (1948) 32 Cal.2d 850, 854 [198 P.2d 885], we said that 'It is now established as the law that "the right to picket peacefully and truthfully is one of organized labor's lawful means of advertising its grievances to the public, and as such is guaranteed by the Constitution as an incident of freedom of speech."' [Citations.]

"Nor is the union's interest in picketing diminished because it may communicate its message at other, admittedly less advantageous, locations off plaintiff's premises. As we said in *Wollam* v. *City of Palm Springs* (1963) 59 Cal.2d 276, 284 [29 Cal.Rptr. 1, 379 P.2d 481], '. . . freedom of speech entails communication; it contemplates effective communication.' [Citation.] The evidence further discloses that in the instant case picketing on other nearby public streets or sidewalks would entail the danger of traffic tie-ups, confusion as to the object of the picketing, and the requirements of larger signs and more pickets." The court concluded that the defendant's interest in picketing outweighed plaintiff's interest "in vindicating a theoretical invasion of its right to exclusive control and possession of private property," and said, on pages 774-775: "We conclude that the picketing in the present case cannot be adjudged in the terms of absolute property rights; it must be considered as part of the law of labor relations, and a balance cast between the opposing interests of the union and the lessor of the shopping center. The prohibition of the picketing would in substance deprive the

union of the opportunity to conduct its picketing at the most effective point of persuasion: the place of the involved business. The interest of the union thus rests upon the solid substance of public policy and constitutional right; the interest of the plaintiff lies in the shadow cast by a property right worn thin by public usage.''

Real parties in interest contend that the proof of various improprieties and prejudicial actions on the part of the strikers was such as to authorize the injunction which involved an absolute prohibition of the use of mechanical amplifiers. Most of the instances of former misconduct are completely prohibited by other portions of the preliminary injunction. Modification of the court's absolute prohibition of the use of mechanical devices in the circumstances shown by the record should properly be effected.

Accordingly, it is ordered that a peremptory writ of prohibition issue directing the trial court to refrain from enforcing by contempt proceedings or otherwise that portion of the preliminary injunction of August 18, 1967, in Giumarra Bros. Fruit Co. et. al., v. United Farm Workers Organizing Committee et al., Kern County Superior Court No. 100011, which absolutely prohibits the reasonable use by petitioners in connection with peaceful picketing during daylight working hours, of bullhorns (in the absence of the emission therefrom of "loud and raucous noise" as that term is used in *Wollam* v. *City of Palm Springs, supra,* 59 Cal.2d 276) to state by means of the reasonably amplified human voice the viewpoint and position of the petitioners in the current strike against the real parties in interest, and that said prohibition of action by the Superior Court of Kern County shall apply to all such activity of the petitioners since the original issuance of said preliminary injunction on August 18, 1967.

Gargano, J., concurred.

Stone, J., deeming himself disqualified, did not participate.