[Civ. No. 13094. Third Dist. Dec. 30, 1971.]

WILLIE C. REAVES, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
L. N. PATTERSON, as Superintendent, etc., Real Party in Interest.

[Civ. No. 13095. Third Dist. Dec. 30, 1971.]

GERALD C. WHITEHEAD, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
L. N. PATTERSON, as Superintendent, etc., Real Party in Interest.

[Civ. No. 13096. Third Dist. Dec. 30, 1971.]

JOHN VILLALOBOS, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
L. N. PATTERSON, as Superintendent, etc., et al., Real Parties in Interest.

(Consolidated Cases.)

## COUNSEL

B. E. Bergesen III and Frank Garfield for Petitioners.

James Jablonski as Amicus Curiae on behalf of Petitioners.

Evelle J. Younger, Attorney General, Daniel J. Kremer and Roger E. Venturi, Deputy Attorneys General, for Respondent and for Real Parties in Interest.

## OPINION

**REGAN, Acting P. J.**—These consolidated cases involve petitioners who are seeking, individually and on behalf of all others similarly situated, a writ of mandate directing the Superior Court of San Joaquin County to adopt new and different procedures for the processing of petitions for extraordinary writs. Petitioners contend the present procedures violate certain provisions of the United States and California Constitutions and laws of this state. They also seek to mandate the superior court to forthwith hear and determine, in accordance with valid procedures, the three petitions involved herein and all future petitions.

The petitioners are confined at the Deuel Vocational Institution and have filed petitions for either a writ of mandate or habeas corpus which were denied by the respondent superior court.

At the time of the denial of these petitions, and at the present time, the respondent superior court utilized the following procedures with regard to extraordinary writs: After the filing of the petition for a writ, it is reviewed by the judge presiding in the criminal department and is then forwarded to the district attorney's office so that any factual information can be verified, or if any additional factual information is necessary, that information can be obtained.[1] The district attorney's office is then requested to prepare a proposed order based upon the factual information contained in the petition or obtained as a result of their inquiries. This is done in a majority of the cases. If the petition presents an unusual factual situation, these matters are brought to the attention of the presiding judge of the criminal department, who reviews the entire matter and then directs

---

[1]In cases involving allegations by Deuel inmates concerning their treatment while in confinement, the assigned deputy usually telephones or visits one or more Deuel officials to obtain information.

the district attorney's office to prepare a specified order. In those matters where the district attorney's office submits a proposed order, the judge reviews such order and the order is either signed as submitted or signed as modified. In some instances the court will prepare the order itself. The assigned district attorney usually discusses the results of his investigation with the judge at the time of submitting the file unless the proposed order is a routine matter where the information in the prepared order is self-explanatory.

Petitioners first contend that the writ of mandamus is a proper remedy in this case. It is petitioners' contention that although the superior court is acting upon extraordinary writ petitions, it is not doing so in substance, and that the constitutional and statutory duty imposed upon the court to hear and determine such matters has effectively been transferred to the district attorney. Thus, it argues, such a situation may be remedied by mandamus. (See *Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507, 517-518 [90 Cal.Rptr. 729, 476 P.2d 97]; *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379, 383 [218 P.2d 10].)

In a similar vein, petitioners allege that they have no plain, speedy or adequate remedy other than this mandamus petition since the appeal process is not timely where the protection of constitutional rights is involved. (See *United Farm Workers etc. Committee* v. *Superior Court* (1967) 254 Cal.App.2d 768, 769 [62 Cal.Rptr. 567]; cf. *In re Butterfield* (1967) 253 Cal.App.2d 794, 796-797 [61 Cal.Rptr. 874]; in general, see Cal. Civil Writs (Cont. Ed. Bar) §§ 5.38-5.39, pp. 90-92.) Secondly, petitioners maintain that continued filings of petitions in the respondent court would be a futile act because of the procedures followed. (Cf. *Robinson* v. *Superior Court, supra,* 35 Cal.2d at pp. 383-384.) Thirdly, petitioners maintain the issue presented herein is of great public interest, and point out that these actions are brought as class actions, on behalf of themselves and all other inmates of Deuel whose petitions must be submitted in the first instance to the respondent court. (See *Alden* v. *Superior Court* (1963) 212 Cal.App.2d 764, 768 [28 Cal.Rptr. 387].)[2]

---

[2]A mandamus petitioner may file a class action. (*Chance* v. *Superior Court* (1962) 58 Cal.2d 275, 291 [23 Cal.Rptr. 761, 373 P.2d 849]; see Code Civ. Proc., § 382.) In *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732], the court makes the following comment: "[I]t uniformly has been held that two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented [citations]."

The respondent court[3] attacks the petitioners' position on two grounds. It argues that the present matter may not be raised by writ of mandate; that the appropriate manner to seek review from the denials of the writs should be through the delineated procedures governing habeas corpus, a remedy which has been deemed to be speedy, adequate and, in instances such as the present, exclusive in nature. (See Pen. Code, §§ 1473, 1474; *Leach* v. *Superior Court* (1932) 215 Cal. 531, 536 [12 P.2d 1].)

Secondly, respondent court contends that a representative suit is improper since the community interest is lacking. Petitioners have filed petitions for writ of mandate as individual parties and "on behalf of all others similarly situated." They state that the class is composed of all persons who are confined at Deuel Vocational Institution under the jurisdiction of either the California Department of Corrections or the California Youth Authority. Respondent court argues, however, that petitioners have failed to establish that all of the inmates confined at Deuel have filed petitions for extraordinary writs in the San Joaquin County Superior Court and have been denied relief. It contends that only those inmates whose petitions were wrongfully denied could classify as party plaintiffs, and concludes that a representative suit is improper here since the legal and factual differences do not meet the requirement for a community of interest.

We reject both contentions. Respondent court's first contention overlooks the precise relief petitioners are trying to attain. Petitioners are alleging that the court is employing unconstitutional procedures in processing extraordinary writs. This case does *not* concern the three individual petitions denied by the superior court *except insofar* as the procedures utilized in denying such writs are in issue. Further, petitioners have brought this action not only on behalf of themselves but on behalf of all of the inmates at Deuel. Thus, the relief requested extends to all *future* filings, and the mere refiling in this court of the three petitions would not be adequate as to such future filings. (Cf. *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 286 [32 Cal.Rptr. 830, 384 P.2d 158].) We think the petitioners have made a sufficient showing that there is no plain, speedy or adequate remedy in the ordinary course of law. (See *United Farm Workers etc. Committee* v. *Superior Court supra*, 254 Cal.App.2d at p. 769.) Mandamus is therefore proper.

We also reject respondent court's argument that this is not a proper representative suit since there was no showing that all of the

---

[3]The Superior Court of San Joaquin County is the respondent in this action and L. N. Patterson, Superintendent of Deuel Vocational Institution, the real party in interest. However, since the petition is directed to procedures utilized by the court, the court only will be referred to herein.

inmates at Deuel had filed petitions and had them rejected. Again, the thrust of these petitions is that the court has used improper procedures in reviewing writs *and will continue to do so in the future.* The community of interest which members of the class share is simply that the respondent superior court henceforth act upon all petitions received from class members in a constitutional manner. We hold that this is a proper class action. (See *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 809-810 [94 Cal.Rptr. 796, 484 P.2d 964].)

 Turning to the crux of the matter, i.e., whether the procedures employed by respondent court, as described above, are legally proper, petitioners argue that the procedure adopted by the respondent superior court violates the California constitutional provision against the delegation of judicial functions. (Cal. Const., art. III; *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935]; see also *People* v. *Bird* (1931) 212 Cal. 632, 640 [300 P. 23] [incompetent for Legislature under the Constitution to confer any judicial power on district attorney].) Petitioners contend the superior court has in effect abdicated its responsibility to determine both the facts and the law, and has transferred this judicial responsibility to an officer who stands in an adverse position to the petitioners. (Cf. *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140]; *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993].)

Secondly, petitioners argue the procedure used by the court is violative of various statutory provisions governing mandate and habeas corpus. (See, e.g., Code Civ. Proc., §§ 1086, 1090, 1091; Pen. Code, §§ 1476, 1483, 1484.) They argue that where a petitioner alleges facts, which, if true, would entitle petitioner to some relief, the petition may not be denied "out of hand," and the court must grant the writ or issue an order to show cause. (In general, see *Harris* v. *Nelson* (1969) 394 U.S. 286, 291 [22 L.Ed.2d 281, 286, 89 S.Ct. 1082]; *In re Crow* (1971) 4 Cal.3d 613, 624 [94 Cal. Rptr. 254, 483 P.2d 1206]; *In re Caffey* (1968) 68 Cal.2d 762, 765-766 [69 Cal.Rptr. 93, 441 P.2d 933]; *Thomas* v. *Teets* (9th Cir. 1953) 205 F.2d 236.) Apparently petitioners are contending that this result should follow even if a petitioner's allegations are controverted by official prison records or statements made by prison authorities, since this merely constitutes contested factual allegations which are material and must be resolved at an evidentiary hearing.

Petitioners also contend the procedure used by the respondent court amounts to a suspension of the privilege of the writ of habeas corpus in contravention of both the state and federal Constitutions. (Cal. Const., art. I, § 5; U.S. Const., art. I, § 9; *Johnson* v. *Avery* (1969) 393 U.S.

483, 485-486 [21 L.Ed.2d 718, 721-722, 89 S.Ct. 747].) They contend that since the respondent court has abdicated its responsibility, the writ, for all practical purposes has been suspended in San Joaquin County.

Finally, petitioners contend the superior court procedure violates due process of law under both the state and federal Constitutions.

There are several prongs to this latter attack; that the procedure in question effectively denies them access to the courts (see *In re Allison* (1967) 66 Cal.2d 282, 288-289 [57 Cal.Rptr. 593, 425 P.2d 193]; *Hatfield* v. *Bailleaux* (9th Cir. 1961) 290 F.2d 632, 636), and that the procedure violates the basic elements of fundamental fairness, including the right to a hearing, confrontation and cross-examination, and an impartial decision maker.

In this regard petitioners cite *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 267 [25 L.Ed.2d 287, 299, 90 S.Ct. 1011], where the court states: " 'The fundamental requisite of due process of law is the opportunity to be heard.' [Citation.] The hearing must be 'at a meaningful time and in a meaningful manner.' [Citation.]"[4] They argue that a procedure which permits the facts of a case to be resolved by the district attorney constitutes a denial of this right.

Finally, petitioners contend that where the orders are drafted by the district attorney, the court's procedure does not provide effective access to an impartial decision maker, especially since the proposed orders are not made known to opposing counsel of the petitioner. They conclude that the procedure in question does not satisfy the requirements of due process.

The respondent superior court, on the other hand, generally denies all of the allegations of the petitioners, and maintains that the procedure followed is proper and commendatory. It maintains that the courts have the fundamental power to prescribe the matters cognizable on habeas corpus, the procedure to be followed and the manner of viewing the petitions, since the procedure is not specified by statute. (See *Sanders* v. *United States* (1963) 373 U.S. 1, 22 [10 L.Ed.2d 148, 165, 83 S.Ct. 1068].) It notes

---

[4]In *Thomas* v. *Teets, supra,* 205 F.2d 236, petitioner alleged that he pleaded guilty because of fear, allegedly induced by a sheriff through the threat of lynching. The court ordered the application to be entertained on its merits and stated, inter alia, as follows (at p. 240): "Since the application alleged a violation of due process which was dehors the record of the state criminal proceeding, the [California] supreme court was required to issue the writ. Cal. Penal Code, § 1476, § 1483. Here again Thomas was denied due process—that of the state. The California Supreme Court did not issue the writ. Without opinion it merely entered a bald order that Thomas' application was denied."

the expansion of the writ and the increasing flood of writs which have deluged the courts, requiring new methods and procedure to process and evaluate them. (See Use and Abuse of the Writ of Habeas Corpus, 7 F.R.D. 313; Judicial Council of Cal., 1971 Annual Rep., table 24, p. 166.) Respondent court contends the procedure it has adopted resolves one of the most vexing problems confronting the courts, i.e., how to secure a sufficient investigation of the claims in order to determine whether the petition contains possible meritorious matters, or is merely false, sham or frivolous. (Cf. Cal. Rules of Court, rule 60; in general, see Judicial Council of Cal., 1971 Annual Rep., A Study of Post-conviction Procedures in California, p. 23.) Respondent court also notes that the rights of confrontation and cross-examination do not apply when the records and files show that a petitioner is entitled to no relief. (*Hernandez* v. *Schneckloth* (9th Cir. 1970) 425 F.2d 89, 90-91.) It concludes as follows: "[T]he court's practice of issuing a detailed order listing the reasons for a denial of a particular petition for writ of habeas corpus, specifically informs the petitioner of the reasons for the denial, and provides a record for a reviewing court to consider should the petitioner seek relief in a higher court. Thus, the procedure adopted by the San Joaquin Superior Court does not amount to a suspension of the writ, nor is it a denial of due process of law or equal protection of the law, and since the judge independently exercises his discretion, the procedure does not constitute a delegation of his judicial duties."

At this point we stress that the conduct of the San Joaquin County Superior Court or that of the district attorney shows no evidence of impropriety. Nor do we consider that the district attorney and custodial personnel are necessarily adverse parties who would unduly influence the court through mistaken or malicious information which would act to the detriment of a particular petitioner.

Having said this, however, we are still faced with the question of whether the procedure is constitutionally valid. At the outset we reject petitioners' contentions that the procedure is violative of certain statutes or that it amounts to a suspension of the privilege of the writ of habeas corpus, as well as petitioners' claim that the procedure denies them due process of law. ■ Petitioners, in effect, appear to be saying that their allegations are to be taken at face value and that they are entitled to a full evidentiary hearing *regardless* of what the prison records reveal, what the verified statements of prison officials contain, or that decisional law or statutes may be controlling. We do not construe this to be the law. (See *Sanders* v. *United States, supra,* 373 U.S. at p. 22 [10 L.Ed.2d at p. 165]; *Hernandez* v. *Schneckloth, supra,* 425 F.2d at pp. 90-91.)

█ This brings us to the one remaining contention and that is that the procedure violates our constitutional provision against the improper delegation of judicial functions. Concededly, in a majority of the writs handled in San Joaquin County, the district attorney is the sole source of information presented to the trial court. The question is not whether the district attorney is scrupulously fair in such matters. Rather, the question is whether the trial court has abdicated its judicial responsibility by delegating this function to the district attorney. We think this point is well taken regardless of the fact the respondent court declares in its affidavit that in every instance it exercises its own independent discretion in reviewing the petitions and the orders drafted by the district attorney. (Cf. *Esteybar* v. *Municipal Court, supra,* 5 Cal.3d 119; *People* v. *Tenorio, supra,* 3 Cal.3d 89 [judicial discretion dependent on the pleasure of the district attorney].)

It is of course true that the district attorney is under an obligation, as an officer of the court, to see that justice is done and to accord to defendants their constitutional rights. (*People* v. *Pang Sui Lin* (1911) 15 Cal.App. 260, 263 [114 P. 582]; *People* v. *Ruef* (1910) 14 Cal.App. 576, 595-596 [114 P. 48, 54].) Nevertheless, the district attorney's prime function is to act as the public prosecutor and he serves as the attorney for the People. (Gov. Code, § 26500; *People* v. *Ruef, supra,* 14 Cal.App. at p. 596.) On the other hand, superior courts have been granted original jurisdiction in proceedings for extraordinary relief. (Cal. Const., art. VI, § 10.) In effect, the superior court is the independent arbiter and fact finder in all matters over which it has jurisdiction. Thus, when the district attorney reviews a particular petition at the superior court's request, obtains the needed information from the various correction authorities himself, and then drafts the order, we think that this results in an improper delegation of the judicial function.

█ We realize that our decision in this matter may result in some hardship, as superior court judges are not always provided with sufficient clerical or investigative staffs. Furthermore, we fully realize that inequities among the various counties exist since some counties are overloaded merely because they have a prison or prisons located within their boundaries. (Krause, *A Lawyer Looks at Writ-Writing,* 56 Cal.L.Rev. 371, 372.)

Nevertheless, there are feasible alternatives available. We think the following guidelines are reasonable. The respondent court should review each petition individually. If the petition is patently frivolous or lacking in merit on its face, it can be summarily denied. If the trial court records or prison documents or appellate opinions are needed, the court can instruct the clerk to obtain verified copies of the same. Should the court deem it necessary to formulate an order with its reasons for an order to show cause or a denial, it should do so.

In conclusion, we hold that the present procedure utilized by the respondent court is constitutionally impermissible as an improper delegation of the judicial function.

Let a peremptory writ of mandamus issue directing the San Joaquin County Superior Court to cease and desist from following its present procedures outlined above and to implement new procedures consistent with this opinion.

Janes, J., and Pierce, J.,* concurred.

A petition for a rehearing was denied January 26, 1972, and petitioners' application for a hearing by the Supreme Court was denied February 23, 1972.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.