[Crim. No. 14714. Third Dist. Oct. 3, 1975.]

ROBERTO FRIAS, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN
COUNTY, Respondent;
L. N. PATTERSON, as Superintendent, etc., Real Party in Interest.

**COUNSEL**

Jerome B. Falk, Jr., for Petitioner.

Robert T. Fries, Steinhart, Goldberg, Feigenbaum & Ladar, Joshua Bar-Lev, Lillick, McHose, Wheat, Adams & Charles, Richard B. Morris, Howard J. Berman and Robert H. Fabian as Amici Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Willard F. Jones and Roger E. Venturi, Deputy Attorneys General, for Respondent and for Real Party in Interest.

**OPINION**

**PARAS, J.**—Petitioner is an inmate of Deuel Vocational Institution, having been convicted in 1971 of assault with a deadly weapon. He now has pending before respondent superior court a petition for habeas corpus challenging his incarceration in the K-Wing, the maximum segregation area. The petition before us requests issuance of a writ of mandamus to require respondent court to process his pending petition and all other similar "conditions petitions"[1] filed by other prisoners, in a manner which he claims will comply with sections 1476 to 1484 of the Penal Code and with the due process and equal protection clauses of the

[1]"Conditions petitions," as the term is used by petitioner, and as we shall use it herein, refers to habeas corpus petitions attacking the conditions of a prisoner's confinement, particularly with respect to alleged mistreatment or illegal treatment of prisoners inside penal institutions.

United States and California Constitutions. Petitioner, supported by amicus curiae, requests that we disavow the procedural guidelines of *Reaves* v. *Superior Court* (1971) 22 Cal.App.3d 587 [99 Cal.Rptr. 156], and set forth new and comprehensive guidelines for superior court processing of conditions petitions of California prisoners.

Petitioner asserts that the occurrences following his conditions petition in respondent court in San Joaquin County in 1973 are representative of the practices of that court, and he has compiled exhibits of numerous other conditions petitions filed in San Joaquin, Marin, Sacramento and Monterey Counties which he asserts were handled generally in the same or similar alleged unlawful manner. What occurred in San Joaquin County with respect to petitioner's 1973 habeas corpus petition is essentially the following:

1. On October 25, 1973, petitioner filed a "Notice of Motion and Order to Show Cause" in the respondent court in which he questioned the validity of his segregated custody status. Despite its title, the document was in both form and substance a petition for habeas corpus.

2. On April 4, 1974, respondent court reviewed the written materials (including a written review, evaluation and summary by court personnel) and directed its clerk (as permitted by *Reaves, supra,* p. 596) to make a specific inquiry of the officials at Deuel Vocational Institute regarding justification for petitioner's custodial status.

3. The clerk obtained from Deuel written factual information indicating that petitioner was confined in segregation status (not in isolation) and had been designated as a "Director's case" because petitioner had been identified as a leader of a potentially dangerous inmate gang known as the "Nuestra Familia" and was still considered to be an influential leader within that faction. Petitioner's designated custody status was being reviewed at three-month intervals.

4. On May 29, 1974, respondent court reviewed the applicable law, policies, and factual assertions in the materials before it, and by written opinion-order denied the petition. Petitioner was personally served with a copy of said order. The court based its denial principally upon the fact that petitioner had been designated a "Director's case" after investigation by the Director of Corrections found that petitioner was "repeatedly involved and implicated in . . . violent conflicts that have led to the death or injury of numerous inmates over the past few years." The superior

court ruled that under the decision of this court in the case of *In re Henderson* (1972) 25 Cal.App.3d 68 [101 Cal.Rptr. 479], disciplinary practices of the prison authorities are reviewable only for arbitrary or capricious actions, and there was no such showing. However, the court ordered that the prison authorities periodically review petitioner's status as to necessity for continued segregation.

After the foregoing proceedings, petitioner did not seek review of the merits of his case by habeas corpus in this or the Supreme Court. Instead, he filed this petition in the Supreme Court, which transferred the matter to us.

Petitioner argues that the procedure used by the respondent court by which his factual allegations were adversely resolved without an evidentiary hearing and through the court's ex-parte use of contradictory evidence from prison officials and prison records violates existing penal statutes and also due process and equal protection. In making these allegations petitioner concedes that the superior courts are now guided by the procedure recommended by this court in *Reaves* v. *Superior Court, supra,* as well as *In re Henderson, supra,* and *In re Hutchinson* (1972) 23 Cal.App.3d 337 [100 Cal.Rptr. 124], in all of which the Supreme Court denied petitions for hearing.

After oral argument, we directed counsel to submit supplemental briefs bearing upon the question of whether the doctrine of exhaustion of administrative remedies applies to this case (i.e., the pursuit by petitioner of administrative remedies under rules and regulations of the Director of Corrections, including a right of appeal). Such briefing was concluded on July 11, 1975, with respondent urging that the doctrine applies and that since no exhaustion of administrative remedies is alleged in the petition, the superior court has no jurisdiction to act; petitioner urges the contrary.

In the meantime, two additional events have taken place which have altered the original circumstances at the time the petition was filed. First, the status of "Director's case" was abolished on March 11, 1975. Second, the petitioner was on March 18, 1975, removed from K-Wing segregation and restored to the general prison population.

Assuming that the exhaustion doctrine was applicable to conditions petitions when the petition herein was filed, we are convinced from the material submitted by counsel that petitioner either had no administra-

tive remedies to exhaust or had exhausted whatever rights he had. The director's case status of petitioner made the normal administrative appeal procedures inapplicable to him. And in fact, prior to the petition, petitioner did appeal in writing to the Director of Corrections for relief, thus utilizing the only nonjudicial appeal available to him. Therefore, having alleged that he was a director's case, petitioner need not have further alleged exhaustion of administrative remedies, even if the doctrine were generally applicable.

■ Petitioner's release from the K-Wing segregation of which he complained and with which his petition dealt has, however, made the petition moot. If it were granted, it would result in nothing for petitioner; hence resolution of the question originally presented is academic and of no practical effect. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, p. 4418 et seq.)

Petitioner has earnestly argued that the case is not moot; rather, that it is within the class of public interest actions which merit decision notwithstanding solution of the individual petitioner's plight. We disagree. This lawsuit is focused on superior court review of in-prison disciplinary actions. Appraisal of the superior court's procedures is shaped by appraisal of the internal prison procedures under review. The latter appears to be in a state of evolutionary flux. When this case was argued before us in October 1974, Frias was confined in segregated lockup status as a "Director's case," outside the reach of the grievance procedures established for prisoners generally. When this court's independent research thereafter uncovered the fact that recent amendments to in-prison administrative review procedures had not been brought to our attention, we requested counsel to submit the above mentioned supplemental points and authorities on the subject. The supplemental briefing brought to light the March 11, 1975, directive abolishing the "Director's case" and the March 18, 1975, change in petitioner's status. Not only is petitioner Frias freed from the segregated status which triggered these proceedings; in addition, the class of inmates he seeks to represent is no longer vulnerable to administratively unreviewable orders segregating them from the general prison population. (See Rules and Regulations of the Director of Corrections (Revised July 1975), DP 1003 and DP 4515.) Viewed both as an individual assertion of constitutional guaranties and as a class claim of constitutional deprivation, the proceeding no longer bears the characteristics claimed for it at its inception. The case is moot as to Frias; it is moot as to the in-prison grievance actions upon which it centers.

In one respect the proceedings involve an ongoing problem. As noted above, the petition was filed on October 25, 1973, but was not acted upon by the court in any fashion until April 4, 1974, six months later. This is an unreasonably long delay in processing a habeas corpus conditions petition; it is neither suggested nor condoned by the procedural guidelines of our *Reaves* decision.

It is well established that inmates of state prisons are entitled to minimum elements of procedural due process in the imposition of prison discipline. (*Wolff* v. *McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct. 2963].) The writ of habeas corpus is an indispensable adjunct to that entitlement. The San Joaquin County Superior Court's leisurely schedule was totally inconsistent with the historic function of the writ of habeas corpus as a "prompt and efficacious remedy." (*Fay* v. *Noia*, 372 U.S. 391, 401-402 [9 L.Ed.2d 837, 846-847, 83 S.Ct. 822]; see Pen. Code, § 1476.) Habeas corpus delayed is habeas corpus denied. The *Reaves* opinion, *supra*, suggested that judges utilize their clerks for the purpose of acquiring informative official documents. That suggestion did not sanction the delegation of judicial functions to the clerical staff, nor did it imply that habeas corpus petitions might gather dust in a judicial or clerical "in basket." These observations, it is hoped, will stimulate the timely processing of prisoner petitions by superior courts.

Because of its mootness, the petition of Frias is dismissed.

Regan, J., concurred.

**FRIEDMAN, Acting P. J.**—I fully concur in the court's opinion and decision but believe that additional observations are needful. Despite contrary claims, experienced judges know that a large portion of prisoner petitions are characterized by untrue or distorted allegations and complaints of fancied wrongs. (Cf. 25 Stan.L.Rev. 1, 37-39.) Judges are understandably reluctant to load clogged calendars by issuing orders to show cause in response to habeas corpus petitions which turn out to be frivolous. Some kind of screening capability is essential to the sensible fulfillment of habeas corpus responsibility.

The gap between habeas corpus responsibility and capability is a well-known and unsolved problem in the administration of California justice. Court administrative facilities for handling prisoner petitions have fallen far behind substantive advances in prison law. (See 1971 Report, Judicial Council of Cal., pp. 22-65; Vanderet, *Procedural Due*

*Process in California Prisons,* 48 State Bar J. 668; Flint, Judicial Responses to Problems of Prison Administration: A Bibliography (Am. Judicature Society Report No. 33).)

Most superior courts have no legal or investigative assistants. In *Reaves* v. *Superior Court,* 22 Cal.App.3d 587 [99 Cal.Rptr. 156], we held that a superior court may not utilize the district attorney as its agent to screen habeas corpus petitions but suggested that judges utilize their clerks for help in acquiring informative official documents. The suggestion was at best an expedient. It had at least as much validity as our dependence upon inmate "writ writers" as the stout champions of hard-won constitutional liberties (see *Johnson* v. *Avery,* 393 U.S. 483 [21 L.Ed.2d 718, 89 S.Ct. 747]). These liberties are poorly served when prison writ writers concoct irresponsible habeas corpus petitions. They are worse served when hard-pressed trial judges lack skilled assistance to screen these petitions. The agencies of the State of California are concertedly stifling the right of habeas corpus.

The flow of "conditions" petitions varies in direct ratio to prison tensions. Important sources of prison tension can be relieved by institutional administrative remedies and by the availability of ombudsmen and legal advisers. The California Department of Corrections has taken a progressive step by providing administrative appeals from inmate disciplinary actions. Experience will show that additional pressure-reducing mechanisms are inevitable. Faced with continued executive and legislative neglect of prison conditions, the superior courts in counties with state prisons should press for parajudicial help. That pending habeas corpus petitions should collect dust in court files is intolerable in a state which professes allegiance to constitutional guaranties. I assume that the executive and legislative branches, equally with the judiciary, share responsibility for these guaranties.

A petition for a rehearing was denied October 22, 1975, and petitioner's application for a hearing by the Supreme Court was denied December 11, 1975. Wright, C. J., Tobriner, J., and Mosk, J., were of the opinion that the application should be granted.