Filed 7/23/20 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SHAUN SMITH, | C088817 |
| Petitioner, | |
| | (Super. Ct. No. 17FE006817) |
| v. | |
| | ORDER MODIFYING OPINION |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | [NO CHANGE IN JUDGMENT] |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on July 14, 2020, be modified as follows:

1.      Delete footnote 1 on page 2.

2.      Delete the word "traverse" and replace it with "reply" on:  page 10, the last paragraph; page 10 at footnote 7; page 11 the first full paragraph; and page 12, the first full paragraph.

1

There is no change in the judgment.

BY THE COURT:


 /s/
Robie, Acting P. J.


 /s/
Mauro, J.


 /s/
Butz, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/14/20 (unmodified opinion)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SHAUN SMITH, | C088817 |
| Petitioner, | (Super. Ct. No. 17FE006817) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate. Petition granted. Patrick Marlette, Judge.

Diane Nichols, under appointment by the Court of Appeal, for Petitioner.

Duane Morris and Michael Louis Fox for Respondent.

Xavier Becerra, Attorney General of California, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen and John W. Powell, Deputy Attorneys General, for Real Party in Interest.

1

Petitioner Shaun Smith filed in this court, as an indigent defendant representing himself in propria persona (pro. per.) in a pending criminal action, a petition for writ of mandate, prohibition, or other appropriate relief (petition) against respondent Sacramento County Superior Court, challenging respondent's policies and procedures pertaining to pro. per. defendants then in effect. Petitioner's grievance lay in the duties respondent had assigned to the pro. per. coordinator -- an individual hired and supervised by, and subject to the control and direction of, Sacramento County (the county).

Respondent revised its policies and procedures pertaining to pro. per. defendants in response to our order to show cause,[1] as further explained *post*; the revisions did not, however, quell petitioner's concerns pertaining to the pro. per. coordinator's continued role in the disposition of investigative and ancillary defense services requests and the review of subpoenas. And, rightfully so. When we consider the nature of those duties delegated to the pro. per. coordinator, as provided in respondent's revised policies and procedures, we conclude respondent has impermissibly delegated its judicial powers in contravention of the separation of powers clause of the California Constitution. We thus issue a writ of mandate directing respondent to cease and desist from applying and implementing the pertinent portions of its revised pro. per. policies and procedures, and directing respondent to revise those policies and procedures in a manner consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

In his verified petition, petitioner asserted: (1) he is a pro. per. defendant in a criminal matter; (2) he filed and respondent denied two ex parte applications for an order clarifying the role of the pro. per. coordinator; (3) he had been denied access to the court

---

[1] An order to show cause "signifies the court's preliminary determination that the petitioner has pleaded sufficient facts that, if true, would entitle him to relief." (*People v. Duvall* (1995) 9 Cal.4th 464, 475.)

2

by being precluded from filing requests for ancillary services and other documents and instead being required to provide such documents to the pro. per. coordinator for filing; (4) documents petitioner provided to the pro. per. coordinator were not considered filed with the trial court, raising issues of timeliness as to filing; (5) when he did provide the pro. per. coordinator with documents for filing in the trial court, it took the pro. per. coordinator between one and three weeks to file some of the documents, while other documents were rejected by the pro. per. coordinator and returned to petitioner without explanation; and (6) he had not received several thousands of pages of redacted discovery.

Petitioner requested a stay in his criminal matter, an order providing he could file ancillary services requests and other documents directly with the trial court, and that his motions and requests would be adjudicated by a judicial officer. Petitioner further requested an order restraining respondent from prohibiting the filing of documents and ancillary services requests by indigent pro. per. defendants directly in the trial court and requiring those individuals to submit requests and documents to the pro. per. coordinator. Petitioner also requested an order compelling the pro. per. coordinator to provide him with the remaining discovery in his case and appointing an attorney to assist him in obtaining such discovery.

This court appointed counsel for petitioner in this writ proceeding. We requested a preliminary opposition to the petition from respondent and directed it to include a discussion of the following four issues: (1) the scope of the pro. per. coordinator's responsibilities, including but not limited to, his or her role in deciding requests for ancillary services; (2) the legal authority pursuant to which the pro. per. coordinator operates, including but not limited to, the authority that permits him or her to decide requests for ancillary services; (3) the protocols/procedures pro. pers. are required to follow when requesting ancillary services, obtaining discovery, and filing documents with the court; and (4) where such protocols and procedures can be found.

Respondent filed a preliminary opposition addressing only the foregoing four questions; it did not admit or deny the verified facts alleged in the petition.  Respondent attached four documents as exhibits:  (1) "Memorandum of Understanding Between the County of Sacramento and the Superior Court of California, Court of Sacramento" (memorandum of understanding); (2) "Sacramento Superior Court October 2006 Policies and Procedures for Pro Pers" (2006 pro. per. policies and procedures); (3) a memorandum to the county board of supervisors from Conflict Criminal Defenders for the agenda of November 7, 2006, with the subject, "Authorize A Retroactive Memorandum Of Understanding Between The County Of Sacramento And The Superior Court Of California, County Of Sacramento In Regards To Pro Per Coordination And Ancillary Services From August 1, 2006, Agreement With Donald Manning To Provide Pro Per Coordination From November 12, 2006, And Appropriation Request No. 27-012 In The Amount Of $95,104" (agenda memorandum); and (4) "Policy and Procedure for In-Custody In Pro Per Defendants & Investigators Assigned To In-Custody In Pro Per Defendant Cases."[2]  (Underlining omitted.)

In describing the scope of the pro. per. coordinator's responsibilities, respondent wrote, "Sacramento County, through the Conflict Criminal Defender's [*sic*] office, provides to the Superior Court ongoing coordination of investigative and ancillary services for indigent pro per defendants, as delineated in the Policies and Procedures for Pro Pers."  Respondent directed us to the memorandum of understanding, which

---

[2]  We treat respondent's submittal of the 2006 pro. per. policies and procedures as an implied request for judicial notice and take judicial notice thereof under Evidence Code section 459 as a matter that could be judicially noticed under Evidence Code section 452. The parties were given "a reasonable opportunity to meet such information" (Evid. Code, § 459, subd. (d)) and "to present information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed" (Evid. Code, §§ 459, subd. (c), 455, subd. (a)).  The other three exhibits were attached to petitioner's verified briefs.

4

provides, in pertinent part: the county will contract with an attorney to be the pro. per. coordinator; the county shall seek input from respondent but "retains ultimate responsibility for determining with whom to contract"; and the pro. per. coordinator will be "under the sole direction and supervision of the [county] Conflict Criminal Defender's [*sic*] Office." In return, respondent agreed to pay to the county the cost of the pro. per. coordinator's services because it was a court cost. The term of the memorandum of understanding is ongoing, from August 1, 2006, until terminated by either party upon 90 days' notice or by mutual agreement.

Respondent further quoted the following paragraph from the 2006 pro. per. policies and procedures in its preliminary opposition: "All [r]equests for ancillary services . . . must be made in writing with sufficient detail to justify the need for the service. The investigator will receive the written requests from the defendant and deliver them to the Pro Per Coordinator. The Pro Per Coordinator will review each item, prepare a written response addressing each requested item and advising the defendant whether the item is approved, denied, modified, or that additional information is needed. The response shall include an advisement that the defendant may request a court review and modification of the Pro Per Coordinator's determination. [¶] A judicial officer may order that all or any requests for investigative or ancillary services be forwarded by the Pro Per Coordinator directly to the judicial officer for determination. When there is such an order, the Pro Per Coordinator shall also forward to the court a proposed determination prior to coordinating any investigative/ancillary services. The judicial officer's request for direct review of requests shall be entered into the minute order and will be transmitted by the courtroom clerk to the Pro Per Coordinator . . . and to the defendant via the Law Librarian . . . ."

Respondent directed us to the agenda memorandum and the memorandum of understanding for the legal authority pursuant to which the pro. per. coordinator performs his or her duties. The agenda memorandum states the memorandum of understanding "is

5

for Conflict Criminal Defenders to assume responsibility from [respondent] for coordination of requests for ancillary services by pro per defendants" and provides: "There is a benefit to both the Court and the County. The courts are relieved of the time consuming [*sic*] task of reviewing requests for ancillary services by pro per defendants. Conflict Criminal Defenders will receive compensation for providing this service to the Court and will be able to assure cost effective and responsible spending of tax payer's [*sic*] monies."

Because respondent did not address the allegations in the petition or discuss the adequacy or legality of its policies and procedures concerning the use of the pro. per. coordinator, this court ordered respondent to file a supplemental written response to the petition and directed it to include therein a discussion of: "(1) the allegations in the petition, including (a) pro per defendants in pending criminal actions are prohibited from filing any document directly with the trial court, (b) pro per defendants in pending criminal actions must submit all legal documents they intend to file with the trial court to the pro per coordinator, who then decides whether to file the documents or to reject and return them for being frivolous or overly long, (c) review by the pro per coordinator can result in one to three week delays in the filing of documents, and (d) petitioner has not received thousands of pages of discovery from the pro per coordinator; (2) the adequacy and legality of respondent's policies and procedures concerning the use of the pro per coordinator, including but not limited to, whether the pro per coordinator's adjudication of requests for ancillary services constitutes an improper delegation of judicial authority; (3) whether petitioner is entitled to have his [ancillary services] request for a real estate expert adjudicated by the trial court prior to trial; (4) why this case is not governed by our Supreme Court's decision in *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 325-326 [(*Corenevsky*)] [the trial court alone has authority to determine whether a defendant is entitled to ancillary services] and this court's decision in *Reaves v. Superior Court* (1971) 22 Cal.App.3d 587, 596 [(*Reaves*)] [finding impermissible delegation of judicial

6

authority where trial court reviewed orders drafted by district attorney]; and (5) petitioner's reply and documentation."**3/4**

Respondent filed a supplemental preliminary opposition. It disagreed with petitioner's allegations regarding the pro. per. coordinator's role, arguing: (1) the pro. per. coordinator assists with, but does not control, filings; (2) the pro. per. coordinator assists with ancillary requests, but does not finally adjudicate any requests; (3) pro. per. criminal defendants are not prohibited from filing any document directly with the trial court; (4) the pro. per. coordinator does not decide whether documents submitted to him or her for review are filed or not; (5) the pro. per. coordinator does not delay the filing of any documents by one to three weeks; and (6) petitioner had previously received all requested discovery.

As to the pro. per. coordinator's review of investigative and ancillary defense services requests, respondent explained: "In order to obtain requested ancillary services at the County's expense, the defendant must show that the services requested are reasonably necessary to his defense. [Citation.] [Conflict Criminal Defenders] has responsibility to pay for the services and necessarily can provide approval without the need for the court's intervention, but to obtain [Conflict Criminal Defenders'] approval for expert services, a particularized showing is required in order that the appropriate expert service can be identified and provided. [Citation.] Here, Petitioner sought expert assistance with regard to the claims of real estate fraud. The Pro Per Coordinator explained to Petitioner the specific information Petitioner needed to provide [to Conflict

---

**3** Petitioner attached a declaration and various exhibits to his reply to respondent's preliminary opposition to the petition. We elected to treat petitioner's reply, including the supporting documentation, as a supplement to the petition.

**4** We also ordered the People to file a supplemental written response. The People complied with the order. We do not discuss the People's position because it is not pertinent to the disposition in this matter, as explained *post*.

7

Criminal Defenders] if he wanted to successfully support his request for services. The information requested would both demonstrate that the service was reasonably necessary to the defense and inform [Conflict Criminal Defenders] of the particular expert assistance needed. [¶] While Petitioner objects to the Pro Per Coordinator's role in obtaining ancillary services, he is aided by the Pro Per Coordinator's involvement. If he submitted his request directly to the Superior Court in the first instance, and did not establish that the requested service was reasonably necessary to his defense, the Superior Court would not be in a position to advise him on how to strengthen that request. The likelihood that a defendant will be able to demonstrate that requested services are reasonably necessary increases with the aid of the Pro Per Coordinator." (Fn. omitted.)

According to respondent, the pro. per. coordinator had previously denied one of petitioner's requests for a real estate expert because petitioner's request did not comply with the Conflict Criminal Defenders' policies and procedures: "it was 'denied' by the Pro Per Coordinator in the context of advising what [Conflict Criminal Defenders] required, with the specific identification of what further information was needed, and the advisement that if re-submitted and approved by [Conflict Criminal Defenders], [Conflict Criminal Defenders] would appoint an expert."

Respondent further asserted its policies regarding and use of the pro. per. coordinator was an appropriate delegation of administrative duties, not an improper delegation of judicial authority. It predominantly relied on a provision allowing a pro. per. defendant to appeal the pro. per. coordinator's decisions to the court. It explained a defendant was "required to make his [or her] request [for ancillary services] in the first instance to the Pro Per Coordinator to facilitate pre-approval by [Conflict Criminal Defenders] pursuant to its policies and procedures," and, if "the County initially declines to provide a service, the Superior Court is available to adjudicate that request." In the event of such an adjudication by the court, "[the Conflict Criminal Defenders'] rationale for its initial denial of any service -- communicated by the Pro Per Coordinator -- [would

8

be] provided to the Superior Court." In this regard, respondent asserted *Corenevsky* and *Reaves* were relevant but not controlling. (*Corenevsky*, *supra*, 36 Cal.3d at p. 307; *Reaves*, *supra*, 22 Cal.App.3d at p. 587.)

Respondent also noted that it updated the 2006 pro. per. policies and procedures "to make clear within the procedures themselves that the services of the Pro Per Coordinator are to assist pro per defendants, and to make clear that the full access to the Superior Court is never impeded thereby," and updated a letter provided to pro. per. defendants to explain the pro. per. coordinator's role.

We issued an order to show cause why relief should not be granted, directing respondent, in discussing all of the issues presented, to address: (1) whether respondent's policy of requiring pro. per. criminal defendants to submit pleadings and subpoenas to the pro. per. coordinator for review prior to filing and/or service impermissibly restricts such defendants' access to the judicial process; (2) whether respondent's policy of requiring pro. per. defendants to submit requests for ancillary services to the pro. per. coordinator for decision in the first instance, as detailed in respondent's revised policies and procedures and described in the agenda memorandum, constitutes an impermissible delegation of judicial authority; and (3) whether respondent has changed its procedures related to pro. per. defendants following the filing of the petition (and if so, how) or simply clarified its written policies.

Respondent filed a return.[5] Therein, respondent stated it amended and clarified its 2006 pro. per. policies and procedures relating to the scope of the pro. per. coordinator's services. Respondent explained it clarified "that it is not a requirement that the Pro Per

---

[5]    In the order to show cause, we provided that the People, as real party in interest, could respond to the return. The People, however, took no position on the issues addressed in the return, stating they were no longer adverse to the matter and have no actual interest in the issues addressed in the return.

9

Coordinator review proposed filings prior to those documents being filed with the Superior Court, and that the Pro Per Coordinator reviews subpoenas for procedural correctness only, prior to service." Respondent further stated it "changed its policies with respect to the Pro Per Coordinator's review of ancillary services requests, providing that the Pro Per Coordinator will review each requested item and provide a recommendation for the Superior Court's consideration, and that the Superior Court will review each request and recommendation and issue a ruling." In that regard, if respondent required more information, it could set the matter for hearing.

Respondent asserted the changes clarified pro. per. defendants have "full and unfettered access to the Superior Court" and made clear its "use of the Pro Per Coordinator does not impede access to the judicial process and does not amount to an impermissible delegation of judicial authority." Respondent attached two documents to the return: (1) "Policy and Procedure For Pro Per Defendants & Investigators Assigned to Their Cases," revised September 25, 2019 (revised pro. per. policies and procedure); and (2) "Sacramento Superior Court Internal Policies And Procedures For Pro Per Defendants," revised September 25, 2019 (revised internal pro. per. policies and procedures).[6]

Petitioner filed a traverse.[7] Petitioner conceded the issues pertaining to the delay in providing him discovery and the denial of access to the courts (other than for

---

**6** We treat respondent's submittal of these exhibits as an implied request for judicial notice and take judicial notice thereof under Evidence Code section 459 as a matter that could be judicially noticed under Evidence Code section 452. The parties were given "a reasonable opportunity to meet such information" (Evid. Code, § 459, subd. (d)) and "to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed" (Evid. Code, §§ 459, subd. (c), 455, subd. (a)).

**7** Petitioner's counsel submitted a verification on behalf of petitioner, declaring she had read the traverse and had reviewed the exhibits, and knew the contents to be true.

10

investigative and ancillary defense services requests) are no longer in issue. He asserted, however, the following three issues remain: (1) respondent failed to explain why subpoenas requested by pro. per. defendants must be reviewed by the pro. per. coordinator for procedural correctness prior to service by the investigator; (2) the revised procedure pertaining to the investigative and ancillary services requests continues to constitute an impermissible delegation of judicial authority, denies, in part, access to the court, and deprives a pro. per. defendant of due process of law; and (3) respondent has failed to provide written policies and procedures sufficient to inform pro. per. defendants about respondent's procedures.

Petitioner attached to his traverse a copy of the agenda memorandum and all attachments thereto, including the memorandum of understanding and the agreement for consulting services between the county and the pro. per. coordinator. The consulting agreement between the county and the pro. per. coordinator provides, in pertinent part, that the pro. per. coordinator's work product is the property of the county and the pro. per. coordinator "is subject to the control or direction of [the c]ounty as to the designation of tasks to be performed [and] the results to be accomplished by the services thereunder agreed to be rendered and performed." Exhibit A to the consulting agreement includes a description of services and provides, among other things: "Upon request of the [county], or upon order of the Court, the [pro. per. coordinator] shall, [through] Conflict Criminal Defenders, evaluate, approve, recommend and coordinate ancillary service requests for individuals charged with criminal conduct and representing themselves in the Superior Court of Sacramento County."

DISCUSSION

I

*Mootness*

Respondent appointed trial counsel for petitioner after the petition was filed in this court. Respondent argues, and petitioner acknowledges, the change in petitioner's pro.

11

per. status precludes this court from granting petitioner any effectual relief, rendering moot the issues presented in his petition. (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [when an event occurs that renders it impossible for the court to grant effective relief, the court will dismiss an appeal].) Petitioner asserts, however, this court should consider, under the public interest exception to the mootness doctrine, the constitutional concerns raised by respondent's revised pro. per. policies and procedures pertaining to investigative and ancillary defense services requests and subpoena review and respondent's failure to provide sufficient written information regarding such policies and procedures to pro. per. defendants.

As petitioner notes, we may exercise our inherent discretion to decide otherwise moot issues if a petition for writ of mandate involves a matter of public interest and the issue is likely to recur and evade appellate review. (*Californians for Fair Representation - No on 77 v. Superior Court* (2006) 138 Cal.App.4th 15, 22.) We do so here and consider two of the three issues raised in the traverse.

A superior court's practices, procedures, and rules are matters of public concern, impacting fundamental rights and access to the courts. The concerns raised by the practices and procedures relating to the investigative and ancillary defense services requests and subpoena review implicate a constitutional cornerstone of our democracy -- the separation of powers between the legislative, executive, and judicial branches of government. Given the gravity of the public interest at stake and the continued delegation of duties to the pro. per. coordinator, we exercise our inherent authority to decide the controversy.

We decline, however, to consider whether respondent will provide adequate information regarding its policies and procedures to pro. per. defendants in the future. The crux of petitioner's argument is that respondent has failed to indicate whether it will provide both the revised pro. per. policies and procedures and the revised internal pro. per. policies and procedures to pro. per. defendants. He hypothesizes respondent may

12

intend to provide only the revised pro. per. policies and procedures, in which case "a number of problems" may arise. We decline to consider unripe hypothetical and speculative future actions respondent may or may not take.

## II

### *Investigative and Ancillary Defense Services Requests*

### A

### *Legal Background*

A defendant in a criminal proceeding has constitutionally protected rights to prepare his or her defense, including the right to investigative and ancillary defense services. (*Corenevsky*, *supra*, 36 Cal.3d at pp. 319-320 [the constitutional right to investigative and ancillary defense services is "a necessary corollary of the right to effective assistance of counsel"].) "Evidence Code section 730 explicitly provides for court-appointed expert witnesses, and . . . Evidence Code section 731, subdivision (a), and Government Code section 29603 clearly state that the county must pay those court-ordered expenses." (*Corenevsky*, at pp. 318-319, fns. omitted; *People v. Worthy* (1980) 109 Cal.App.3d 514, 520 ["If a criminal defendant requires the services of investigators or scientific or medical experts to assist him in preparation of his defense, that assistance must be provided. Whether it is paid for by the government or by the defendant depends solely on the defendant's economic status"].)

Although the foregoing statutes "do not directly provide for court-ordered investigators, law clerks, or enumerated experts other than expert witnesses generally," "the right to such services is to be inferred from at least two statutes respecting an indigent defendant's statutory right to legal assistance; and more fundamentally, such court-ordered defense services may be required in order to assure a defendant his constitutional right not only to counsel, but to the effective assistance of counsel." (*Corenevsky*, *supra*, 36 Cal.3d at p. 319, fn. omitted.) It is within the trial court's sound discretion to grant a criminal defendant's request for investigative and ancillary defense

13

services "if [the defendant] has demonstrated the need for such services by reference to ' "the general lines of inquiry he wishes to pursue, being as specific as possible." ' " (*Id.* at p. 320; see *Torres v. Municipal Court* (1975) 50 Cal.App.3d 778, 784.)

B

*The Revised Investigative And Ancillary Defense Services Request Procedure*

The revised pro. per. policies and procedures provide: "All requests for investigative and ancillary services must be made in writing with sufficient detail to justify the need for the service. The investigator will receive the written requests from the defendant and deliver them to the Pro Per Coordinator. The Pro Per Coordinator will review each item and provide a recommendation for the Court's consideration. [¶] The Pro Per Coordinator's recommendation to the Court shall include the reasons for the recommendation and a copy of the pro per defendant's written request. The Court will review the request and recommendation and issue a ruling. If more information is needed, the Court may set the matter for hearing. [¶] Upon receipt of the Court's order or at the conclusion of a hearing, if the Court so orders, the Pro Per Coordinator shall coordinate any approved investigative/ancillary services."

C

*Analysis*

Petitioner maintains the revised procedure pertaining to the pro. per. coordinator's review of and recommendation regarding a pro. per. defendant's request for investigative and/or ancillary defense services remains an improper delegation of judicial power, denies him, in part, direct access to the court, and deprives him of due process of law. We agree the duties delegated to the pro. per. coordinator in that regard constitute an impermissible delegation of judicial authority, as provided in *Corenevsky* and *Reaves*. (*Corenevsky*, *supra*, 36 Cal.3d at p. 307; *Reaves*, *supra*, 22 Cal.App.3d at p. 587.) We, therefore, do not consider petitioner's remaining contentions.

14

The separation of powers clause in the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by th[e] Constitution." (Cal. Const., art. III, § 3.) The California Constitution vests the judicial power of the state in our Supreme Court, the courts of appeal, and the superior courts. (Cal. Const., art. VI, § 1.) Thus, executive and legislative officers cannot exercise or interfere with judicial powers.

"The California Constitution [further] imposes limitations upon the power of nonjudicial officers [(e.g., special masters, commissioners, and referees)] to exercise judicial functions." (*People v. Superior Court* (*Laff*) (2001) 25 Cal.4th 703, 721; Cal. Const., art. VI, § 22 ["[t]he Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties"].) Subordinate judicial officers are appointed by order of the trial court, serve at the pleasure of the trial court, and are subject to rules pertaining to minimum qualifications and training requirements promulgated by the Judicial Council. (Gov. Code, § 71622, subds. (a)-(c); see Cal. Rules of Court, rule 10.701 [qualifications and education of subordinate judicial officers].) "Masters and referees perform subordinate judicial duties only if their findings and recommendations are advisory and not binding until adopted by the court. [Citations.] The court independently must review the referee's proposed findings and conclusions." (*Laff*, at p. 721.)

"The focus in questions of separation of powers is 'the degree to which [the] governmental arrangements comport with, or threaten to undermine, either the *independence and integrity* of one of the branches or levels of government, or the ability of each to fulfill its mission in checking the others so as to preserve the *interdependence* without which independence can become domination.' " (*City of Sacramento v. California State Legislature* (1986) 187 Cal.App.3d 393, 398-399.)

Our Supreme Court in *Corenevsky* discussed the delineation of responsibilities between local governments and the judiciary pertaining to investigative and ancillary defense services requests. (*Corenevsky*, *supra*, 36 Cal.3d at p. 307.) In that case, the county auditor declined to disburse funds to pay for "court-ordered [investigative and ancillary defense] services unless there existed sufficient allocated monies in an appropriate account in the county budget." (*Id*. at pp. 323-324.) Our Supreme Court considered "what role the board of supervisors, and hence the auditor, may play in regard to court-ordered defense services." (*Id*. at p. 325.) The answer was unequivocal -- the trial court alone has the authority to determine whether a defendant has shown a reasonable need for defense services and the county is powerless to review such requests, or to modify or veto the court's determination. (*Ibid.*) "To hold otherwise would be to encourage and facilitate local government intrusion into exclusive powers of the judiciary" because "it is solely a judicial question whether a given defendant shall be afforded requested defense services." (*Id*. at p. 326.)

The second pertinent separation of powers case was issued by this court almost a half century ago. In *Reaves*, this court concluded a superior court's procedures governing the review and disposition of extraordinary writs violated the California Constitution's provision against the delegation of judicial functions. (*Reaves*, *supra*, 22 Cal.App.3d at pp. 590-591, 596.) The procedures at issue in that case provided: "After the filing of the petition for a writ, it is reviewed by the judge presiding in the criminal department and is then forwarded to the district attorney's office so that any factual information can be verified, or if any additional factual information is necessary, that information can be obtained. The district attorney's office is then requested to prepare a proposed order based upon the factual information contained in the petition or obtained as a result of their inquiries. This is done in a majority of the cases. If the petition presents an unusual factual situation, these matters are brought to the attention of the presiding judge of the criminal department, who reviews the entire matter and then directs the district attorney's

16

office to prepare a specified order. In those matters where the district attorney's office submits a proposed order, the judge reviews such order and the order is either signed as submitted or signed as modified. In some instances the court will prepare the order itself. The assigned district attorney usually discusses the results of his [or her] investigation with the judge at the time of submitting the file unless the proposed order is a routine matter where the information in the prepared order is self-explanatory." (*Id*. at pp. 590-591.)

Essentially, the district attorney was the sole source of information and facts presented to the superior court, obtaining the needed information to review a particular petition from the various correctional authorities and then drafting the order for the court's consideration. (*Reaves*, *supra*, 22 Cal.App.3d at p. 596.) The prison inmates argued, among other things, the superior court had in effect abdicated its responsibility to determine both the facts and the law, and had transferred its judicial responsibility to an officer who stood in an adverse position to the them. (*Id.* at p. 593.) The superior court asserted the procedure was proper and commendatory, in line with its fundamental power to implement procedures not specified by statute, and appropriate given "the procedure it ha[d] adopted resolve[d] one of the most vexing problems confronting the courts, i.e., how to secure a sufficient investigation of the claims in order to determine whether the petition contains possible meritorious matters, or is merely false, sham or frivolous." (*Id.* at pp. 594-595.) The superior court further maintained its procedure did not constitute a delegation of judicial duties because a judge independently exercised its discretion in determining whether to grant or deny a petition for extraordinary writ. (*Id.* at p. 595.)

This court concluded the superior court's practice was an impermissible delegation of the judicial function, explaining: "when the district attorney reviews a particular petition at the superior court's request, obtains the needed information from the various correction authorities himself, and then drafts the order, . . . [it] results in an improper delegation of the judicial function." (*Reaves*, *supra*, 22 Cal.App.3d at p. 596.)

17

Recognizing "superior court judges are not always provided with sufficient clerical or investigative staffs" and "inequities among the various counties exist since some counties are overloaded merely because they have a prison or prisons located within their boundaries," this court set forth the following proposed guidelines: "The [superior] court should review each petition individually. If the petition is patently frivolous or lacking in merit on its face, it can be summarily denied. If the trial court records or prison documents or appellate opinions are needed, the court can instruct the clerk to obtain verified copies of the same. Should the court deem it necessary to formulate an order with its reasons for an order to show cause or a denial, it should do so." (*Ibid.*)

As explained *ante*, we directed respondent to consider *Corenevsky* and *Reaves* before we issued the order to show cause. Respondent believes the revised investigative and ancillary services requests procedure does not constitute an impermissible delegation of judicial powers because the court receives input from both the pro. per. defendant and the pro. per. coordinator regarding the requested service and then independently determines whether such service will be provided. Respondent further attempts to distinguish the pro. per. coordinator's role from the district attorney's role in *Reaves*, asserting the pro. per. coordinator functions as the clerk required by *Reaves* and emphasizing the court receives the factual information submitted by the pro. per. defendant (thus not relying solely on factual information submitted by the pro. per. coordinator) and the pro. per. coordinator does not draft the order approving or denying requests. In respondent's view, the pro. per. coordinator "is a sworn clerk of the Superior Court and an experienced attorney who is working under the direct supervision of, and serving at the pleasure of, the Superior Court." Respondent refers us to *People v. Superior Court* (*Laff*), *supra*, 25 Cal.4th at page 721, relating to the use of special masters and referees in judicial proceedings, and California Code of Judicial Ethics, canon 3B(7)(a), which provides, "[a] judge may consult with court personnel or others

18

authorized by law, as long as the communication relates to that person's duty to aid the judge in carrying out the judge's adjudicative responsibilities."

We analyze the issue in two steps. First, we consider whether the pro. per. coordinator performs judicial functions in reviewing, considering, and making a recommendation regarding the resolution of investigative and ancillary defense services requests. The answer is, yes. We next consider whether the pro. per. coordinator is an officer, employee, or independent contractor of the court. The answer is, no; the pro. per. coordinator is a local government independent contractor. We thus conclude the pro. per. coordinator's role in the disposition of requests for investigative and ancillary defense services constitutes an improper invasion into the province of the judiciary, violating the separation of powers clause.[8]

The review and consideration of a defendant's request for investigative and ancillary defense services are unquestionably judicial duties.[9] Our Supreme Court has unequivocally spoken on this issue -- "it is solely a judicial question whether a given defendant shall be afforded requested defense services." (*Corenevsky*, *supra*, 36 Cal.3d at p. 326.) The court must determine whether the defendant has demonstrated the need for such services by reference to " ' "the general lines of inquiry he wishes to pursue, being as specific as possible." ' " (*Id.* at p. 320.)

---

[8]　　We requested supplemental briefing from the parties as to whether the procedure violates due process and equal protection principles. In light of our disposition of the issue, we do not decide whether the procedure passes constitutional muster in that regard.

[9]　　Respondent seemingly agrees the pro. per. coordinator's duties in this regard are judicial in nature; it does not argue otherwise and instead analogizes the pro. per. coordinator's role to the judicial clerk's function described in *Reaves* and refers us to a court's authority to use special masters and referees in judicial proceedings and to consult with court personnel and others when carrying out judicial adjudicative responsibilities.

19

Turning to whether the pro. per. coordinator may discharge such duties, we consider the nature of the pro. per. coordinator's employment and his or her relationship with respondent and the county. We initially note respondent's assertions that the pro. per. coordinator is a "sworn clerk" of the court and "working under the direct supervision of, and serving at the pleasure of," the court are *unsupported by any evidence*. We do not consider such statements in the absence of a declaration or verification.[10] (*Hall v. Superior Court* (2005) 133 Cal.App.4th 908, 914; *People v. Superior Court* (*Alvarado*) (1989) 207 Cal.App.3d 464, 470.) Moreover, respondent's assertions are at odds with the position taken in its supplemental preliminary opposition and belied by the memorandum of understanding and the agreement between the pro. per. coordinator and the county. Respondent's attempt to pivot in its characterization of the pro. per. coordinator's role is troubling.

In its supplemental preliminary opposition, respondent asserted and explained the pro. per. coordinator applies *Conflict Criminal Defenders'* policies and procedures in reviewing and evaluating a pro. per. defendant's request for investigative and ancillary defense services and equated the pro. per. coordinator's determination to deny a request with *the county* declining to provide the service. This comports with the county's view, as stated in the agenda memorandum, that respondent's delegation of those duties to the pro. per. coordinator would allow the county "to assure cost effective and responsible spending of tax payer's [*sic*] monies."

The memorandum of understanding, to which respondent is a party, further provides the county selects the pro. per. coordinator and the individual will be "under the

---

[10] For this same reason we disregard respondent's statements that in excess of 90 percent of the requests received by the pro. per. coordinator are approved, "the Pro Per Coordinator has no communication with the County with regard to particular requests made," and "[t]he County's only role is to arrange and pay for ancillary services recommended by the Pro Per Coordinator and ordered by the Superior Court."

20

sole direction and supervision of the Conflict Criminal Defender's [*sic*] Office." The agreement between the pro. per. coordinator and the county is consistent with this understanding, providing the pro. per. coordinator is subject to the control and direction of the county as to the designation of tasks to be performed and the results to be accomplished by the services rendered. This evidence directly contradicts respondent's unsupported assertions the pro. per. coordinator serves under its supervision as a court clerk.

We also do not find respondent's reference to its authority to consult with court personnel or others authorized by law and to appoint subordinate judicial officers applicable to the pro. per. coordinator's role. It is, of course, axiomatic that " 'courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them' " (*People v. Rodriguez* (2016) 1 Cal.5th 676, 682), including the power "to hire staff to assist it in its operations," such as appointing subordinate judicial officers to perform subordinate judicial duties (*People v. Superior Court* (*Laff*), *supra*, 25 Cal.4th at p. 735). But, the pro. per. coordinator is not appointed as a subordinate judicial officer and is not an employee or independent contractor of the court. The pro. per. coordinator may not, therefore, perform judicial duties.

Courts have a duty not only to dispense justice but also to maintain the integrity and impartiality of the judicial system. (*DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 548 ["the core governmental responsibility entrusted to the courts [is] to provide for a public justice system that is unfailingly unbiased and impartial"].) The delegation of judicial duties to the pro. per. coordinator undermines the independence and integrity of the judicial branch by "encourag[ing] and facilitat[ing] local government intrusion into exclusive powers of the judiciary," and thus violates the separation of powers doctrine. (*Corenevsky*, *supra*, 36 Cal.3d at p. 326.)

21

# III

## *Subpoena Review*

"It is fundamental that a defendant in a criminal case has a right to the process of the court to compel the attendance of witnesses [by subpoena] [citations] and that the expenses of such witnesses are county charges." (*People v. Stone* (1965) 239 Cal.App.2d 14, 21.) "The right of a defendant in a criminal proceeding to the use of the subpoena [and/or] subpoena duces tecum[] to compel production of witnesses [and/or] documents is grounded upon due process rights found in the California Constitution, article I, section 15. The means of implementation of the constitutional rights, the production of such evidence, is detailed in section 1985 et seq. of the Code of Civil Procedure and section 1326 et seq. of the Penal Code." (*People v. York* (1980) 108 Cal.App.3d 779, 790.)

Respondent's revised pro. per. policies and procedures provide investigators shall "[h]ave the Pro Per Coordinator review, for procedural correctness only, subpoenas prepared by the pro per defendant, prior to service by the investigator." Respondent believes this requirement presents "no actual or apparent restriction on defendants' access to the judicial process" because the policy "does not require pro per criminal defendants to submit documents to the pro per coordinator prior to filing." It also asserts "the Pro Per Coordinator's review of subpoenas, for procedural correctness only, does not impermissibly restrict access to the judicial process" but, rather, permissibly "supports the Court's interest in the orderly administration of judicial business" because "a subpoena represents an action of the Superior Court."

Petitioner disagrees. He refers us to Penal Code section 1326, subdivision (a)(4), which provides a defendant's attorney of record is authorized to sign and issue a

22

subpoena in criminal cases. He contends respondent "offers no sound justification for why a defendant who is representing himself must have a subpoena screened when his attorney does not, other than the review for procedural correctness" based on the court's interest in the orderly administration of justice. Petitioner asserts "[a]ny procedural deficits would be to the defendant's detriment, not the court's." And, the policy does not allow a defendant "to protect himself against unreasonable delays by the Pro Per Coordinator."

We do not find Penal Code section 1326 pertinent to the issue at hand. Respondent's revised procedure does not implicate the signing and issuance of a subpoena but instead imposes a barrier to the *service* of a subpoena by providing the pro. per. coordinator must review the subpoena before it may be served by the investigator. We, however, conclude the subpoena review procedure constitutes an impermissible delegation of judicial power.

Whether a subpoena is procedurally deficient is a judicial question generally resolved through a motion to quash. (See *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 743.) The delegation to the pro. per. coordinator -- a county independent contractor -- the determination whether a subpoena is procedurally deficient thus violates the separation of powers clause, as explained *ante*.[11]

## DISPOSITION

Let a peremptory writ of mandate issue: (1) directing respondent to cease and desist from applying and implementing the revised pro. per. policies and procedures pertaining to the investigative and ancillary services requests and subpoena review procedures outlined

---

[11] We requested supplemental briefing from the parties as to whether the procedure violates due process and equal protection principles. In light of our disposition of the issue, we do not decide whether the procedure passes constitutional muster in that regard.

herein; and (2) further directing respondent to revise those policies and procedures in a manner consistent with this opinion.

/s/
Robie, Acting P. J.

We concur:


/s/
Mauro, J.


/s/
Butz, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.